<pre>
 1                 UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF OHIO
 2                      EASTERN DIVISION

 3   UNITED STATES OF AMERICA,        Case No. 1:18cr742
                                      Akron, Ohio
 4             Plaintiff,             January 18, 2019

 5        vs.

 6   LAUREN B. WOLF,

 7             Defendant.

 8
                     TRANSCRIPT OF PROCEEDINGS
 9          BEFORE THE HONORABLE KATHLEEN B. BURKE
               UNITED STATES MAGISTRATE JUDGE
10

11                  ARRAIGNMENT/GUILTY PLEA

12

13   APPEARANCES:

14
     For the Government:        Office of the U.S. Attorney
15                              Northern District of Ohio
                                By:  Brian M. McDonough, Esq.
16                              Suite 400
                                801 Superior Avenue, West
17                              Cleveland, Ohio  44113
                                (216) 622-3965
18                              Brian.McDonough@usdoj.gov

19
     For the Defendant:         Patituce & Associates
20                              By:  Catherine R. Meehan, Esq.
                                Suite 1
21                              26777 Lorain Road
                                North Olmsted, Ohio  44070
22                              (440) 471-7784
                                attorney@patitucelaw.com
23

24

25
</pre>

1

2

3    Court Reporter:              Lori Ann Callahan, RMR-CRR
                                 United States District Courthouse
4                                Room 568
                                 2 South Main Street
5                                Akron, Ohio  44308
                                 (330) 252-6022
6

7

8

9

10

11

12

13

14

15   Proceedings recorded by mechanical stenography from a
     digital audio recording; transcript produced by
16   computer-aided transcription.

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2                    - - -

3          THE CLERK:  All rise.  This Honorable United

4     States Court for the Northern District of Ohio is now open

5     for the transaction of business.  The Honorable Kathleen B.

6     Burke presiding.  You may be seated.

7          The case before the court carries Case Number

8     1:18cr742, United States of America versus Lauren B. Wolf.

9          THE COURT:  Good afternoon.  Would counsel for the

10    United States please introduce himself for the record?

11         MR. McDONOUGH:  May it please the court, Your

12    Honor.  Brian McDonough on behalf of the United States of

13    America.  And with me today is from the FBI, Al Chuna.

14         THE COURT:  Okay.  Good afternoon.

15         And would counsel for the defendant please

16    introduce herself?

17         MS. MEEHAN:  Yes.  Thank you, Your Honor.  Good

18    afternoon.  Catherine Meehan on behalf of Lauren Wolf.

19         THE COURT:  Good afternoon.

20         Ms. Wolf, there not having been previously an

21    indictment in this case, it has been brought by way of

22    information.  So today we will have both your arraignment

23    and plea hearing on the charges that were brought against

24    you.

25         During the hearing I will foresee that you were

1  advised of the charge in the information returned against

2  you and of the maximum penalties for that charge.

3  Second, I will advise you of your right to counsel

4  and make sure that you have an attorney or confirm that you

5  have an attorney.

6  Third, I will advise you of your right to remain

7  silent.

8  Fourth, I will ask you a number of questions in

9  order to determine that you are competent to enter a plea,

10  to make sure that your plea is free and voluntary, to make

11  sure that you understand the constitutional rights that you

12  will be giving up if you plead guilty, and to determine

13  whether there is a factual basis for a plea of guilty.

14  After I do all those things, I will receive your

15  plea to the charge in the information.

16  Before we get there, though, I should ask

17  Ms. Meehan to confirm, it is my information that Ms. Wolf

18  does wish to plead guilty to the charge in the information

19  pursuant to a plea agreement.

20  Is that correct?

21  MS. MEEHAN:  Yes, it is, Your Honor.

22  THE COURT:  Okay.  So, Ms. Wolf, you are here

23  today on an information, as I mentioned, that was issued

24  against you on December 14th, 2018.

25  Have you received a copy of the information?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  The information contains one

3     count.  I will ask Mr. McDonough, as attorney for the

4     government, to describe the offense charged in the

5     information.

6          MR. McDONOUGH:  Your Honor, Count 1 of the

7     information is a wire fraud, in violation of Title 18,

8     United States Code, Section 1343, in that on or about

9     January 25th, 2016, in the Northern District of Ohio,

10    Eastern Division, and elsewhere, Defendant Lauren B. Wolf,

11    for the purpose of executing and attempting to execute the

12    scheme and artifice to defraud, transmitted and caused to be

13    transmitted by means of wire communication and interstate

14    commerce writings, signs, signals, pictures and sounds, to

15    wit:  an investor known as JH sent a wire transfer of $100

16    in JH's bank account located in Pittsburgh, Pennsylvania,

17    to --

18          THE COURT:  Mr. McDonough?

19          MR. McDONOUGH:  Oh, yes.

20          THE COURT:  We will go into the complete factual

21    basis for a plea agreement later on in the proceeding.  At

22    this point I just want to have you set forth on the record

23    the nature of the offense charged against Ms. Wolf in the

24    information.

25          MR. McDONOUGH:  Oh, yes, Your Honor.  That would

1    be wire fraud, Title 18, United States Code, 1343.

2        THE COURT:  It seems like we have an interruption

3    so we'll take a moment.

4        (Pause.)

5        THE COURT:  I apologize.  We have a civil

6    proceeding that is going on at the same time, a mediation.

7    So apparently some of the parties or counsel in that may

8    have a question.  But I did tell them we're in a plea

9    agreement at this time.

10        THE CLERK:  Okay, all straight.

11        THE COURT:  All right.  So Mr. McDonough has set

12    forth on the record the nature of the offense that's been

13    charged against you, Ms. Wolf.

14        At this time I will talk to you about your right

15    to counsel.  You do have a constitutional right to be

16    represented by an attorney at every stage of the proceedings

17    in this case.  If you were not able to afford to hire an

18    attorney, the court would appoint one without cost to you to

19    represent you.

20        Do you understand your right to an attorney?

21        THE DEFENDANT:  Yes.

22        THE COURT:  And I understand that you have

23    retained Ms. Catherine Meehan, who is seated next to you, to

24    be your attorney in this matter.

25        Is that correct?

1    THE DEFENDANT:  Yes.

2    THE COURT:  All right.  One of the first things we

3    need to do is to review your consent to my jurisdiction in

4    this matter.  I have received a consent to order of referral

5    to magistrate judge for purposes of receiving defendant's

6    guilty plea.

7    I am going to hold up that document.  On the

8    second page there are some signatures.  And, Ms. Wolf, I

9    will ask you to confirm that your signature is on the top

10    line on the right side of the page.

11    THE DEFENDANT:  Yes, ma'am.

12    THE COURT:  Okay.  And, Ms. Meehan, your signature

13    is underneath Ms. Wolf's, correct?

14    MS. MEEHAN:  Yes, Your Honor.

15    THE COURT:  All right.  Ms. Wolf, you do have the

16    right to offer your plea of guilty to a United States

17    district judge.  By signing and submitting this consent,

18    you're giving up that right and you are agreeing that I may

19    receive your plea.

20    Do you understand that?

21    THE DEFENDANT:  Yes, I do, Your Honor.

22    THE COURT:  And is it your wish to consent to my

23    jurisdiction in this matter?

24    THE DEFENDANT:  Yes.

25    THE COURT:  All right.  Your consent is accepted.

1    During the proceeding, Ms. Wolf, I have a number

2    of matters that I will be discussing with you, including the

3    constitutional rights that you will be giving up if you

4    plead guilty.  I will go over each one of those rights with

5    you.

6    We will take some time to do that.  You should

7    feel free to ask me questions if you have questions

8    regarding either what I'm saying or the questions that I'm

9    asking you.

10   I do want you to know that you have a right --

11   even though you've expressed an intent to plead guilty, you

12   have a right to change your mind at any time up until the

13   end of this proceeding and to enter a plea of not guilty.

14   So you can do that at any time up until the end of the

15   proceeding when I ask you how you plead.

16   Do you understand that?

17   THE DEFENDANT:  Yes, I do.

18   THE COURT:  Okay.  The next thing we're going to

19   talk about is your waiver of indictment in this case.

20   I have received a waiver of indictment which

21   appears to have your signature on it, Ms. Wolf, on the top

22   line on the right side of the page.

23   Is that correct?

24   THE DEFENDANT:  Yes.

25   THE COURT:  And again, Ms. Meehan, your signature

1    is underneath Ms. Wolf's, correct?

2              MS. MEEHAN:  Yes, Your Honor.

3              THE COURT:  All right.  So, Ms. Wolf, do you

4    understand that you have a constitutional right to have your

5    case presented to a grand jury, which would determine

6    whether probable cause exists to return an indictment

7    against you.

8              Do you understand that?

9              THE DEFENDANT:  Yes, Your Honor.  Yes.

10             THE COURT:  And do you understand that by

11   submitting this waiver, which you're permitted to do, you're

12   permitted to waive that right under the Rules of Criminal

13   Procedure, you are agreeing that in your case, instead of an

14   indictment, the felony charge against you has been brought

15   by the United States by way of filing of an information, the

16   information that you're appearing on here today.

17             Do you understand that you've agreed to that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Do you understand that the government

20   can only proceed against you by way of criminal information

21   if you consent in writing?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And if you waive indictment by grand

24   jury, which that's what you've agreed to do in this waiver

25   form, the case will proceed against you on the criminal

1    information just as though you have been indicted.

2               Do you understand that?

3               THE DEFENDANT:  Yes.

4               THE COURT:  Having discussed your right to

5    indictment with you, is it your -- is it your wish to waive

6    an indictment in this case?

7               THE DEFENDANT:  Yes.

8               THE COURT:  And have any threats or promises been

9    made to you to persuade you to waive indictment?

10              THE DEFENDANT:  No.

11              THE COURT:  So having been advised of your rights,

12   I take it that you wish to waive your right to indictment

13   and to proceed -- to allow the case to proceed against you

14   by way of criminal information, correct?

15              THE DEFENDANT:  Yes.

16              THE COURT:  All right.  I have received a written

17   waiver of indictment signed by Ms. Wolf.  I will make a

18   finding that the waiver has been made by Ms. Wolf knowingly

19   and voluntarily, and I will accept your waiver of indictment

20   at this time.

21              As I mentioned earlier, Ms. Wolf, I am going to be

22   asking you -- I am going to be engaging in some discussion

23   with you and I am going to be asking you a number of

24   questions.

25              We have a court reporter here who will be

1   recording my questions and your answers.  She cannot record

2   a nod of the head or other gesture --

3            THE DEFENDANT:  Right.

4            THE COURT:  -- so you are going to need to put

5   your answers in words.

6            If you don't understand a question at any time,

7   please say so and I'll do my best to explain.

8            Also, if you wish to speak with your attorney, you

9   may do that at any time.

10            My questions are not intended to embarrass you,

11   they are for the purpose of making sure that you understand

12   the charge against you and that you understand and are

13   competent to enter a plea today.

14            Do you understand those instructions?

15            THE DEFENDANT:  Yes, I do.

16            THE COURT:  Ms. Wolf, you do have a right to

17   remain silent.  You're not required to make any statement.

18   And any statement you do make may be used against you.

19            Before I receive your plea, I will need to ask you

20   questions to make sure that your plea is valid.  In

21   answering those questions, you will be making statements

22   against your interest and you will incriminate yourself.

23            Do you understand that by proceeding here today

24   with a plea of guilty, you will necessarily give up your

25   right to remain silent?

1          THE DEFENDANT:  Yes.

2          THE COURT:  The courtroom deputy will place the

3     defendant under oath.

4          THE CLERK:  If you could raise your right hand the

5     best you can.

6          (Defendant sworn.)

7          THE CLERK:  If you could just adjust the

8     microphone.  You can move it, slide it so she can hear you

9     better.

10         THE DEFENDANT:  Okay.

11         THE COURT:  Ms. Wolf, you have now been sworn and

12    you are under oath to tell the truth.  If you choose to

13    answer my questions, your answers will be subject to the

14    penalties of perjury if they are not truthful.

15         Do you understand that instruction?

16         THE DEFENDANT:  Yes, I do.

17         THE COURT:  As part of the proceeding, I must

18    determine that you're competent to understand the charge

19    against you and competent to enter a plea.

20         I'll start by asking you to state your full name.

21         THE DEFENDANT:  Lauren Bev Wolf.

22         THE COURT:  And how old are you, Ms. Wolf?

23         THE DEFENDANT:  Sixty-two.

24         THE COURT:  Are you a citizen of the United

25    States?

1          THE DEFENDANT:  Yes, I am.

2          THE COURT:  How far did you go in school,

3    Ms. Wolf?

4          THE DEFENDANT:  College.  Bachelor's degree.

5          THE COURT:  And you said a bachelor's degree, you

6    said?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Okay.  And what was your degree in?

9          THE DEFENDANT:  Accounting.

10          THE COURT:  Okay.  I take it from your answers,

11    Ms. Wolf, that you're able to read and write in English,

12    correct?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And also able to obviously speak and

15    understand English, correct?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Okay.  Ms. Wolf, do you feel that you

18    are able to make important decisions affecting your life?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Are you able to manage your own

21    affairs?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Okay.  Are you currently on probation,

24    parole or supervised release for any other federal or state

25    conviction?

1          THE DEFENDANT:  No.

2          THE COURT:  And within the last year, Ms. Wolf,

3     have you been hospitalized or treated for any mental

4     illness, a drug addiction or an alcohol addiction?

5          THE DEFENDANT:  No.

6          THE COURT:  In the last 24 hours, have you taken

7     any medication or drugs or alcohol?

8          THE DEFENDANT:  Medications, yes.

9          THE COURT:  Okay.  Is there anything about that

10    medication that affects your ability to understand what is

11    going on here today?

12         THE DEFENDANT:  No.

13         THE COURT:  Do you have any concerns at all about

14    your ability to understand what is being said in the

15    courtroom, the charge against you and your decision-making

16    with respect to entering a plea?

17         THE DEFENDANT:  I have no concern.

18         THE COURT:  And, Ms. Meehan, do you have any

19    concerns or -- about your client's competence to plead

20    today?

21         MS. MEEHAN:  No, Your Honor.

22         THE COURT:  Okay.  Ms. Meehan, can you explain to

23    me -- not Ms. Meehan.

24         Ms. Wolf, can you explain to me in your own words

25    your understanding of why we are here today, what the

1  purpose of this proceeding is?

2       THE DEFENDANT:  I accepted investment funds into a

3  company and under the terms of -- under representation that

4  we had an agreement with a scientist for exclusivity, and

5  our agreement was, in fact, not exclusive.

6       THE COURT:  Okay.  And you don't need to go into

7  great detail about the facts of the case.  We will go into

8  those later on in the proceeding.  I just want to know if

9  you have an understanding of the basic purpose of this

10  proceeding.

11       THE DEFENDANT:  Okay.

12       THE COURT:  Okay?

13       THE DEFENDANT:  Uh-huh.

14       THE COURT:  And your understanding is what, of why

15  we are here today.

16       THE DEFENDANT:  I committed wire fraud by

17  accepting the funds on -- on representation that we had the

18  exclusive rights to the scientists' technology.

19       THE COURT:  Okay.

20       THE DEFENDANT:  And I -- pardon me?

21       The purpose of the hearing is for me to plead

22  guilty.

23       THE COURT:  All right.  Mr. McDonough, do you have

24  any concerns about Ms. Wolf's competence to plead?

25       MR. McDONOUGH:  No, Your Honor.

1          THE COURT:  Okay.  Ms. Wolf, have you discussed

2     with your attorney the charge in the information to which

3     you intend to plead guilty and the penalties associated with

4     that charge?

5          THE DEFENDANT:  Yes, I have.

6          THE COURT:  Okay.  Have you told your attorney

7     everything you know about the case?

8          THE DEFENDANT:  Yes, I have.

9          THE COURT:  And have you reviewed with your

10     attorney the terms of the plea agreement and had the

11     opportunity to ask your attorney any questions regarding the

12     means of those -- the meaning of the terms?

13          THE DEFENDANT:  Yes, I have.

14          THE COURT:  Are you completely satisfied with your

15     attorney's representation of you and the advice that she has

16     given you?

17          THE DEFENDANT:  Yes, I am.

18          THE COURT:  Ms. Meehan, have you advised your

19     client regarding all plea offers that have been made by the

20     government?

21          MS. MEEHAN:  Yes, Your Honor.

22          THE COURT:  Okay.  Ms. Wolf, I am now going to

23     discuss with you the constitutional rights that you would be

24     giving up if you plead guilty.  I'll go through those one by

25     one.

1          The first is your right to a trial, including the

2   right to jury trial.  As I mentioned, you have a right to

3   plead not guilty and to require the government to proceed to

4   trial.

5          At trial you would have the right to a jury trial

6   and you would have the right to the assistance of counsel.

7   You would not have to prove your innocence at trial.

8   Rather, the government would be required to prove you guilty

9   by proof beyond a reasonable doubt as to each element of the

10  offense charged against you.

11         Do you understand your right to a trial, including

12  the right to jury trial?

13         THE DEFENDANT:  Yes, I do.

14         THE COURT:  And do you understand that by pleading

15  guilty, you will be giving up that right?

16         THE DEFENDANT:  Yes, I do.

17         THE COURT:  You have a right to compulsory

18  process.  That means that if the case went to trial, you

19  would have the right to have the court issue subpoenas to

20  require the attendance of witnesses who could testify in

21  your behalf.

22         Do you understand that right?

23         THE DEFENDANT:  Yes.

24         THE COURT:  And do you understand that by pleading

25  guilty, you will be giving up that right?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  You have a right to confront

3     witnesses.  That means if the case went to trial, you would

4     have the right to see, to hear and to have your attorney

5     cross-examine all witnesses that the government might

6     present against you.

7          Do you understand that right?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  And do you understand that by pleading

10    guilty, you will be giving up that right?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  You have the right to remain silent.

13    If the case went to trial, you would have the right to

14    remain silent at trial.  You could testify if you chose to,

15    but you would also have the right to choose not to testify.

16    If you chose not to testify, the court would instruct the

17    jury that the jury could draw no inference or suggestion of

18    guilt from the fact that you chose not to testify.

19         Do you understand your right to remain silent at

20    trial?

21         THE DEFENDANT:  Yes, I do.

22         THE COURT:  And do you understand that by pleading

23    guilty, you will be giving up that right?

24         THE DEFENDANT:  Yes, I do.

25         THE COURT:  You have a right against

1    self-incrimination.  As I mentioned earlier, if you proceed

2    with a plea of guilty, I will need to ask you questions,

3    including questions about the facts, to make sure that there

4    is a valid basis for a plea of guilty in this case.

5           In answering those questions, you will give up

6    your right not to incriminate yourself and you will have to

7    acknowledge your guilt in order to make a valid guilty plea.

8           Do you understand your right not to incriminate

9    yourself?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  And do you understand that by pleading

12   guilty, you will be giving up that right?

13          THE DEFENDANT:  Yes.

14          THE COURT:  In summary, if you plead guilty and if

15   the district judge accepts your plea, you will give up your

16   right to a trial and the other rights I have just described

17   to you, there will be no trial, and the district judge will

18   enter a judgment of guilty and will sentence you on the

19   basis of your guilty plea after receiving a presentence

20   investigation report.

21          Do you understand that?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  You understand that the offense to

24   which you are pleading guilty is a felony offense, and that

25   a judgment of guilty may deprive you of valuable civil

1  rights, including the right to vote, the right to hold

2  public office, the right to serve on a jury and the right to

3  possess a firearm?

4  THE DEFENDANT:  Yes, I do.

5  THE COURT:  I am now going to discuss with you the

6  nature of the charge in the information filed against you.

7  The information charges that -- there's a one-count

8  information.  It charges that you violated 18, United States

9  Code, Section 1343, which pertains to wire fraud.

10  Ms. Wolf, have you discussed with your attorney

11  the charge in the information?

12  THE DEFENDANT:  Yes, I have.

13  THE COURT:  Do you feel that you understand the

14  charge made against you in the information?

15  THE DEFENDANT:  Yes, I do.

16  THE COURT:  Okay.  I'm now going to advise you of

17  the elements of that charge.  If you want to follow along,

18  they're set forth on page 3 of your plea agreement at

19  paragraph 9.  There are four elements.

20  The first element is the defendant, which is you,

21  Ms. Wolf, knowingly participated in or devised or intended

22  to devise a scheme to defraud in order to obtain money or

23  property as charged.

24  The second element is the scheme to defraud

25  included a material misrepresentation or concealment of a

1    material fact.

2           The third element is the defendant had the intent

3    to defraud.

4           And the fourth element is that in advancing or

5    furthering or carrying out the scheme to defraud in order to

6    obtain money or property, the defendant transmitted or

7    caused the transmission of any writings, signal or -- any

8    writing, signal or -- I'm trying to read this,

9    Mr. McDonough.

10          MR. McDONOUGH:  Or sound.

11          THE COURT:  Or sound, okay.  Any writing, signal

12   or sound by means of a wire, radio or television communi- --

13   television communication in interstate commerce.

14          So those are the four elements.

15          Ms. Wolf, do you understand those four elements?

16          THE DEFENDANT:  Yes, I do.

17          THE COURT:  Do you have any questions regarding

18   any of the elements?

19          THE DEFENDANT:  No, I do not.

20          THE COURT:  Ms. Meehan, have you discussed with

21   your client the elements of the offense?

22          MS. MEEHAN:  Yes, Your Honor.

23          THE COURT:  And do you feel that she understands

24   the elements of the offense?

25          MS. MEEHAN:  Yes, Your Honor.

1          THE COURT:  Okay.  I'm now going to ask

2    Mr. McDonough, as counsel for the United States, to state

3    the penalties associated with the charge in the information.

4    Please state any maximum possible penalty, including

5    imprisonment, fine or term of supervised release, any

6    mandatory minimum penalty, any applicable forfeiture, the

7    court's authority to order restitution, the court's

8    obligation to impose a special assessment, and whether the

9    offense is probationable.

10          MR. McDONOUGH:  Your Honor, the maximum in prison

11   for Count 1, wire fraud, is 20 years.  The maximum statutory

12   fine is $250,000.  The maximum alternative fine is twice the

13   gross pecuniary gain or the gross pecuniary loss.  The

14   maximum period of supervised release is three years.  There

15   is a special assessment of $100 upon conviction.

16          There is no forfeiture in this case.  There is an

17   agreement for the defendant to make full restitution in the

18   amount of $300,000.  And this offense is probationable.

19          THE COURT:  Okay.  Ms. Wolf, did you understand

20   what Mr. McDonough said about the penalties associated with

21   this offense?

22          THE DEFENDANT:  Yes, I did -- do.

23          THE COURT:  He mentioned, among other things, that

24   there's a potential term of supervised release of three

25   years following -- up to three years following any term of

1    imprisonment.

2            Do you understand that if you are placed on

3    supervised release, you will have to follow certain

4    conditions of your supervised release, and if you violate a

5    condition, the court can send you back to prison for an

6    additional term for violating the supervised release?

7            Do you understand that?

8            THE DEFENDANT:  Yes, I do.

9            THE COURT:  And in some instances, depending on

10   the facts, if the court sends you back to prison for

11   violating your supervised release, the term for that

12   violation, when added to the original term, could exceed the

13   maximum term for the underlying offense.

14           Do you understand that?

15           THE DEFENDANT:  Yes, I do.

16           THE COURT:  I am going to ask you some questions,

17   Ms. Wolf, now to make sure that your plea is free and

18   voluntary.

19           THE DEFENDANT:  Okay.

20           THE COURT:  Is your decision to plead guilty the

21   result -- a decision that you have made on your own without

22   any coercion?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Has anyone threatened you or

25   threatened anyone else or forced you in any way to plead

1    guilty?

2              THE DEFENDANT:  No.

3              THE COURT:  I understand there's been a plea

4    agreement entered into between you and your attorney and

5    counsel for the government.

6              Is that correct?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  I'm going to hold up what has been

9    handed to me as a plea agreement in order to have you

10   identify it.

11             The plea agreement, in the lower right corner of

12   each page, has a set of initials.  Are those your initials,

13   Ms. Wolf?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  And on the last page, there's --

16             MR. McDONOUGH:  6.  Sorry.

17             THE COURT:  -- there's a signature page at page

18   10, and it's prior to the appendix.  There's an appendix

19   that follows the signature page.  So I'm looking at the

20   signature page to ask you to tell me whether your signature

21   is on the top line on that page.

22             THE DEFENDANT:  I signed it, yes.

23             THE COURT:  Okay.  Ms. Meehan, your signature is

24   underneath Ms. Wolf's, correct?

25             MS. MEEHAN:  Yes, Your Honor.

1          THE COURT:  And, Mr. McDonough, your signature is

2     the third signature on the page, correct?

3          MR. McDONOUGH:  Yes, Your Honor.

4          THE COURT:  Okay.  Before you signed the plea

5     agreement, Ms. Wolf, did you have an opportunity to read it

6     and discuss it with your attorney?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you feel that you understand the

9     terms of the plea agreement?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  I'm now going to ask counsel

12     for the United States to set forth the substance of the plea

13     agreement on the record.  After he does that, I will ask you

14     and your counsel, Ms. Wolf, if you agree with what he has

15     stated.

16          Mr. McDonough, you may proceed.  You don't have to

17     read every word, but it's the substance of the agreement.

18          MR. McDONOUGH:  Yes.

19          THE COURT:  With the exception of the statement of

20     facts, which we will cover separately.

21          MR. McDONOUGH:  Your Honor, the substance of the

22     agreement as set forth in the plea agreement is the

23     defendant will enter a guilty plea to Count 1 as charged.

24          The parties have agreed to jointly recommend the

25     use of the advisory sentencing guideline computation in this

1  case.  That guideline will not be -- the recommendation will

2  not be binding upon the court.

3           Both parties agree to have the right of allocution

4  at sentencing.

5           The parties did stipulate to a guideline

6  computation for the offense of wire fraud.  That the total

7  offense level before acceptance of responsibility would be

8  19.

9           And upon a guilty plea, the government would move

10 for a three-level reduction for acceptance of

11 responsibility.

12          The parties have no agreement regarding criminal

13 history category.

14          The defendant has agreed to waive certain

15 appellate, post-conviction rights, with the exception of

16 claims of ineffective assistance of counsel or prosecutorial

17 misconduct.

18          There is a restitution provision, where the

19 parties have agreed to that amount.

20          And the plea agreement itself is set forth in

21 writing, Your Honor.

22          THE COURT:  Okay.  So I see on page 5 -- page 2, I

23 am sorry, paragraph 5, there's a statement that the court

24 may order defendant to pay restitution.

25          Did you indicate that there's a restitution amount

1    specifically set forth in here?  I see --

2              MR. McDONOUGH:  Yes, Your Honor.  Paragraph 22 on

3    page 7 --

4              THE COURT:  Okay.

5              MR. McDONOUGH:  -- goes into further detail.

6              THE COURT:  Okay.  And that states that defendant

7    agrees to make full restitution in the amount of $300,000 as

8    ordered by the court.

9              Correct?

10             MR. McDONOUGH:  Correct, Your Honor.

11             THE COURT:  All right.  Ms. Meehan, do you agree

12   with what counsel for the government has stated as the

13   substance of the plea agreement?

14             MS. MEEHAN:  Yes, Your Honor.  The only thing that

15   I would add is under paragraph 12, there was a

16   recommendation here obviously to go by the guideline

17   computation, but we reserve the right to argue for a

18   variance under 5H1.4.

19             THE COURT:  Okay.

20             MR. McDONOUGH:  I agree, Your Honor.

21             THE COURT:  All right.  And so that is set forth

22   in paragraph 12 on page 4.

23             Ms. Wolf, did you understand what counsel for the

24   government stated about the substance of the plea agreement

25   and do you agree with what he stated with the amendment or

1    the addition of what your counsel stated?

2              THE DEFENDANT:  Yes, I do.

3              THE COURT:  Okay.  Now, I did notice that he at

4    one point referred to the parties reserving the right to

5    allocution.  I know sometimes we use words -- lawyers use

6    words that people who are not lawyers may not understand.

7    So I just want to make sure that you understand what that

8    means, which is at the time of sentencing, you will have

9    received the presentence investigation report and you and

10   your attorney will have the right to comment on that, as

11   well as you will have the right to speak on your own behalf

12   to the sentencing judge regarding the sentence.  And counsel

13   for the government will also have the right to speak on that

14   subject as well.

15             Do you understand that?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  Okay.  Ms. Wolf, has anyone, including

18   your attorney, the attorney for the United States or the

19   court, made any promise to you other than the promise that's

20   contained in the plea agreement to persuade you to plead

21   guilty?

22             THE DEFENDANT:  No.

23             THE COURT:  Okay.  I'm now going to talk for a few

24   minutes about sentencing.  Have you and your attorney --

25   Ms. Wolf, I don't want to know what you discussed with your

1   attorney, but whether you discussed how the Sentencing

2   Commission guidelines might apply to your case.

3           Have you discussed that topic?

4           THE DEFENDANT:  Oh, yes.

5           THE COURT:  Okay.  I'm going to hold up a

6   sentencing table.  Have you seen that document?

7           THE DEFENDANT:  Yes.

8           THE COURT:  I want to make sure that you

9   understand how to read the sentencing table.  I'll give you

10  an example which doesn't have anything to do with your case,

11  but just for the purpose of making sure you understand how

12  to read a table.

13          So if we had an offense that was an offense level

14  of 3 and a criminal history category of VI, can you tell me

15  what the guideline range for that case would be?

16          THE DEFENDANT:  3-9.

17          THE COURT:  Yeah.  And three to nine what?

18          THE DEFENDANT:  Months.

19          THE COURT:  Okay.  Yes, it's three to nine months.

20  So on each -- you know, the offense levels are on the left

21  side of the page and the criminal history categories are

22  across the top of the page.

23          So I'm going to direct your attention to

24  paragraphs 9 to 17 of the plea agreement that starts on page

25  3.

1          Do you understand, Ms. Wolf, that these paragraphs

2     discuss the application of the sentencing guidelines to your

3     case?

4               THE DEFENDANT:  Yes, I do.

5               THE COURT:  Okay.  In paragraph 11, it states that

6     "Defendant understands that the advisory guideline range

7     will be determined by the court at the time of sentencing

8     after a presentence report has been prepared by the

9     probation office and reviewed by the parties."

10          So do you understand that at this time, there's no

11     agreement between you and the government as to the guideline

12     range that applies to your case, and that that will be

13     determined by the court at the time of sentencing?

14               THE DEFENDANT:  Yes, I do.

15               THE COURT:  Okay.  Turning to paragraph 17.  That

16     indicates that the parties have no agreement about your

17     criminal history category.

18          So do you understand that?

19               THE DEFENDANT:  Yes, I do.

20               THE COURT:  All right.  And as Mr. McDonough said,

21     there has been agreement between the parties as to the

22     offense level, and that's set forth in paragraph 15.

23          So you understand that as well, correct?

24               THE DEFENDANT:  Yes.

25               THE COURT:  Yes.  With an additional provision in

1    16 for a reduction for acceptance of responsibility,

2    correct?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Okay.  I'm now going to direct your

5    attention to paragraph 13 of the plea agreement, which is on

6    page 4.  In that paragraph, it states, "Sentencing

7    recommendations not binding on the court.  Defendant

8    understands that the recommendations of the parties will not

9    be binding on the court, and that the court alone will

10   decide the advisory guideline range under the sentencing

11   guidelines, whether there is any basis to depart from that

12   range or impose a sentence outside the advisory guideline

13   range and what sentence to impose.  Defendant further

14   understands that once the court has accepted defendant's

15   guilty plea, defendant will not have the right to withdraw

16   such plea if the court does not accept any sentencing

17   recommendations made on defendant's behalf or if defendant

18   is otherwise dissatisfied with the sentence."

19             Do you understand that paragraph as well?

20             THE DEFENDANT:  Yes, I do.

21             THE COURT:  You understand that sentencing rests

22   within the discretion of the court, that federal sentencing

23   law requires the court to impose a sentence that is

24   reasonable, and that the court must consider the advisory

25   sentencing guidelines in determining what is a reasonable

1    sentence, correct?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And do you understand that any

4    recommendations contained in the plea agreement or made by

5    the parties are not binding on the court and the court may

6    impose any sentence that is permitted under the law?

7              THE DEFENDANT:  Yes, I do.

8              THE COURT:  Okay.  And do you understand that in

9    some circumstances, the court has the discretion to, after

10   determining what the guideline range is that applies to your

11   case, to impose a sentence that is either more or less

12   severe than what the range -- guideline range calls for,

13   correct?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  And I think your attorney called

16   attention to the fact that you are reserving the right to

17   argue for a variance under the Sentencing Guideline Section

18   5H1.4.  But the court does have the authority to impose a

19   sentence that is either more or less severe, correct?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that the sentence

22   that the court imposes may be different from any estimate

23   that your attorney may have given you?

24             THE DEFENDANT:  Yes.

25             THE COURT:  And if the court imposes a sentence

that is different from what is recommended by either the

government or your attorney, you'll have no right to

withdraw your guilty plea --

THE DEFENDANT:  Yes.

THE COURT:  -- do you understand that?

Do you also understand that parole has been

abolished, and if you are sentenced to prison, you will not

be released on parole?

THE DEFENDANT:  Yes.

THE COURT:  Having discussed your rights with you,

do you still wish to proceed with a guilty plea, Ms. Wolf?

THE DEFENDANT:  Yes, I do.

THE COURT:  Okay.  We are now going to talk about

a factual basis for a plea of guilty in this case.  The

facts that are relied upon are set forth in Appendix A to

your plea agreement -- Attachment A, I should say,

Attachment A, which is captioned "Factual Basis and Relevant

Conduct."

I am going to ask Mr. McDonough, as counsel for

the United States, to state the facts that are set forth.

You could follow along if you want to by looking at

Attachment A, because after he finishes, I will ask if you

agree with the facts that he has stated.

Mr. McDonough, you may proceed.

MR. McDONOUGH:  Your Honor, the factual basis and

1    relevant conduct set forth in Attachment A is detailed.

2    Would the court have a preference as to the government

3    reading that verbatim or providing a summary regarding that?

4              THE COURT:  I see it is fairly lengthy.  So I

5    think what's important to know, Ms. Wolf, is that you are

6    agreeing -- as I understand it, you are agreeing that the

7    facts that are set forth in this Attachment A and which

8    Mr. McDonough is going to summarize are facts that the

9    government could prove if this case went to trial.

10             So do you understand that?

11             THE DEFENDANT:  I do.

12             THE COURT:  Okay.  So, Mr. McDonough, you may

13   summarize.

14             MR. McDONOUGH:  Thank you, Your Honor.

15             Defendant, Lauren B. Wolf, was a resident of

16   Chagrin Falls, Ohio, located within the Northern District of

17   Ohio, Eastern Division.

18             She established or caused to be established a

19   company by the name of Sustainable Coatings, Incorporated,

20   referred to as SCI.  She was the president and on the board

21   of directors.

22             From in or around January 2016 through in or

23   around November 2016, she solicited investments in SCI to

24   issue investors thousand dollar shares of preferred stock

25   once SCI was incorporated and acquired NOTE reported?  NOTE

1    by the Secretary of State.

2            She gave three investors, JH, AH and PH,

3    individuals whose identities were known to the grand jury,

4    $300,000 worth of cognovit promissory notes in exchange for

5    their $300,000 investment in SCI in or around January 2016.

6            She devised a scheme to defraud those investors by

7    inducing them to invest in SCI through materially false and

8    fraudulent misrepresentations and omissions of material fact

9    about SCI's ownership of paint coating technology, SCI's

10   ability to fulfill sales order, and the nature and

11   disposition of the investors' money.

12           The relevant time period was from January 2016

13   through November 2016.  And she ended up using those

14   investor funds for her personal use.  She had made cash

15   withdrawals of personal expenditures and had transferred

16   funds from SCI's account to her account.

17           From in or around January 2016 and continuing to

18   in or around November 2016, she devised the scheme and

19   artifice to defraud and obtain money from the investors.  As

20   a result, the investors suffered a loss of $300,000.

21           The funds were transferred via wire transfer.  One

22   example was an investor transferring $100,000 from -- that

23   crossed state lines from that account into the defendant's

24   account held at SCI, in violation of Title 18, United States

25   Code, Section 1343.

1    And these activities took place in the Northern

2  District of Ohio, Eastern Division.

3    THE COURT:  All right.  So, Ms. Wolf, do you agree

4  with what Mr. McDonough just stated regarding the facts?

5    THE DEFENDANT:  Yes, I do.

6    THE COURT:  Do you have any changes you want to

7  make in the facts?  And when I say that, I am including also

8  the facts -- all of the facts that are set forth in

9  Attachment A to your plea agreement, because in entering

10  into the plea agreement, you are agreeing that all of those

11  facts could be proven.

12    So do you agree with all of the facts that are set

13  forth in Attachment --

14    THE DEFENDANT:  Yes, I do.

15    THE COURT:  Do you have any changes you want to

16  make in those facts?

17    THE DEFENDANT:  No.

18    THE COURT:  Okay.  And do you admit that the facts

19  that are set forth in the attachment and that were

20  summarized by Mr. McDonough are true?

21    THE DEFENDANT:  Yes.

22    THE COURT:  Ms. Meehan, is there any right or any

23  procedural provision that I failed to take account of before

24  I ask Ms. Wolf how she pleads?

25    MS. MEEHAN:  No, Your Honor.

1          THE COURT:  And, Mr. McDonough?

2          MR. McDONOUGH:  No, Your Honor.

3          THE COURT:  Ms. Wolf, I'm now prepared to ask you

4     how you plead.  Before I ask you that, you have the right to

5     have the information read or you can waive, that is, give up

6     your right to have the information read into the record.

7          Do you wish to waive the reading of the

8     information?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Also, before I ask you how you plead,

11    you may confer with your counsel, Ms. Meehan.

12         Do you wish to speak with your attorney?

13         THE DEFENDANT:  No, Your Honor.  I'm okay.

14         THE COURT:  Do you have any questions of me before

15    I ask you how you plead?

16         THE DEFENDANT:  No, Your Honor.

17         THE COURT:  Ms. Wolf, having advised you of your

18    rights and having received evidence as to a factual basis

19    for your plea of guilty, how do you plead to Count 1 of the

20    information, guilty or not guilty?

21         THE DEFENDANT:  Guilty.

22         THE COURT:  Are you pleading guilty to the -- to

23    Count 1 of the information because you are in fact guilty of

24    that offense?

25         THE DEFENDANT:  Yes.

1          THE COURT:  It is my finding that the defendant,

2    Lauren B. Wolf, is fully competent to and capable of

3    entering an informed plea, that she is aware of the nature

4    of the charge brought against her and the consequences of

5    her plea, and that her plea of guilty to Count 1 of the

6    information in this case is a knowing and voluntary plea

7    that is supported by an independent basis in fact as to each

8    of the essential elements of the offense charged against

9    her.

10          I will therefore recommend that the district judge

11   approve her plea agreement, accept her plea and adjudge her

12   guilty of the offense charged in Count 1 of the information.

13          Ms. Wolf, the court will ask for a presentence

14   investigation report to be prepared prior to sentencing

15   unless counsel indicates that one should not be prepared in

16   this case.

17          It is in your interest to cooperate with the

18   probation office in providing information for the report

19   since it will be an important factor in the decision as to

20   what your sentence will be.

21          THE DEFENDANT:  Yes.

22          THE COURT:  If you are interviewed by the

23   probation office for the report, your attorney may be

24   present with you during the interview.

25          And you and your counsel will have a right and an

1    opportunity to review the report and to comment on it at the

2    time of sentencing.

3            This case is assigned to U.S. District Judge Sara

4    Lioi.  She has set the sentencing hearing for May 14th, 2019

5    at 1:30 p.m.  That hearing will take place before Judge Lioi

6    on the 5th floor of this courthouse.

7            At this time, I will ask counsel for the United

8    States whether you have a recommendation for bond pending

9    sentencing.

10           MR. McDONOUGH:  Your Honor, the United States

11   would recommend an unsecured bond as recommended by the

12   pretrial services.

13           THE COURT:  All right.  And we have -- I did

14   receive a recommendation from the Office of Pretrial

15   Services, Ms. Wolf, that you be released on bond with

16   certain conditions.

17           It is important that you understand the conditions

18   and that you follow the conditions, because if you violate a

19   condition of your bond, you will be brought before the court

20   and you could be sent to prison at that time.

21           Do you understand that?

22           THE DEFENDANT:  Yes, I do.

23           THE COURT:  Have you had an opportunity to review

24   the conditions of your bond with your attorney?

25           THE DEFENDANT:  Yes.

1    THE COURT:  Okay.  So the recommendation was that

2    you be released on a $20,000 unsecured bond.  It contains

3    conditions that are both standard conditions and special

4    conditions.

5         Standard conditions include that you may not

6    violate any federal, state or local law while you're on

7    release.

8         You must cooperate in the collection of a DNA

9    sample as authorized.

10        You must advise the court, pretrial services

11   office in writing before you make any change of residence or

12   telephone number.

13        THE DEFENDANT:  Uh-huh.

14        THE COURT:  You must appear in court as required

15   for this case.

16        And, if you are convicted, you must surrender to

17   serve any term of imprisonment that may be imposed on you.

18        Additional conditions are that you must submit to

19   supervision by the Office of Pretrial Services.

20        And so, Officer Lavecchia, when must Ms. Wolf

21   report to your office?

22        PROBATION OFFICER:  Your Honor, I will have her

23   report to my office on Tuesday, I think it's January 22nd.

24        THE COURT:  Okay.

25        PROBATION OFFICER:  I will give her the

1    information before she leaves today.

2              THE COURT:  Yes.  Your office is located in --

3              PROBATION OFFICER:  In Cleveland.

4              THE COURT:  Cleveland.  So, okay.

5              You must surrender any passport that you have and

6    any other travel documents of that nature.

7              Has that been done already, Ms. Meehan?

8              MS. MEEHAN:  No, Your Honor.

9              THE COURT:  All right.  So the passport is to be

10   turned in to the clerk's office upstairs on the fifth floor.

11   You'll get a receipt for it and it will be kept in the vault

12   up there.

13             You may not obtain any new travel documents.  I

14   don't see that here, but that was one of the pretrial

15   services recommendations.  I don't see it on the bond,

16   though.

17             So you may not obtain a new passport or other

18   international travel document.  I'm checking that right now.

19             You must avoid all contact, direct or indirect,

20   with any person who is or may be a victim or witness in the

21   investigation or prosecution of this case.  So when we say

22   indirect contact, you must not use another person to try to

23   communicate indirectly with any of those people, so who may

24   be a victim or witness.

25             Do you understand that?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  You must undergo a psychiatric or

3    mental health evaluation and/or counsel as directed by the

4    office -- and/or counseling as recommended by pretrial

5    services and take all medications prescribed.

6          In your case, we have another special condition,

7    which is that you must avoid counseling others regarding

8    investment and avoid accessing financial accounts and

9    information of persons other than family members.

10          Do you understand that?

11          THE DEFENDANT:  I sure do.

12          THE COURT:  Okay.  So, Ms. Wolf, having reviewed

13    those conditions with you, do you agree to follow all of

14    those conditions?

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  All right.  So you will be ordered

17    released on bond, unsecured bond of $20,000 with the

18    conditions contained in the bond, including the ones that I

19    have reviewed with you here on the record today.

20          Mr. Lavecchia, or Officer Lavecchia, does she need

21    to report downstairs today?

22          PROBATION OFFICER:  Yes, Your Honor, she should

23    report to the probation office downstairs today for

24    instruction regarding the presentence report.

25          THE COURT:  Okay.  So that office is on the B3

1    level of the courthouse?

2              THE DEFENDANT:  Pardon?  The --

3              THE COURT:  The B3 level.

4              THE DEFENDANT:  B3.

5              THE COURT:  It's ten after four.  Are they open?

6              PROBATION OFFICER:  Yes.  Yes, Your Honor.

7              THE CLERK:  She has to get processed by the

8    marshals.

9              THE COURT:  Oh, she has to be processed by the

10   marshals as well?  I don't know logistically how this is

11   going to go, but --

12             THE CLERK:  She has (unintelligible).

13             THE COURT:  Okay.  So Officer Lavecchia is

14   indicating that she should go downstairs.  I think what

15   you're saying is that they may or may not be open after you

16   get processed by the marshal, is that what you're trying to

17   say?

18             (Unintelligible.)

19             THE COURT:  Don't know, okay.

20             Well, I would ask you, Officer Lavecchia, to make

21   sure that she has the instructions she needs to have before

22   leaving here today.

23             PROBATION OFFICER:  Yes, I will instruct her, and

24   if they are closed by the time she gets down there, I will

25   make sure she gets referred when she reports on the 22nd.

1          THE COURT:  All right.  Very good.  Okay, thank

2    you.  With that, this hearing is concluded.

3          THE CLERK:  All rise.

4      (Thereupon, the proceedings were concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                       C E R T I F I C A T E

2

3           I certify that the foregoing is a correct transcript,

4       to the best of my ability, transcribed from a digital

5       audio recording from the record of proceedings in the

6       above-entitled matter.

7

8                       s/Lori A. Callahan
                        Lori Ann Callahan, RMR-CRR
9                       U.S. District Court, Suite 568
                        2 South Main Street
10                      Akron, Ohio  44308
                        (330) 252-6022
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25