IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  1:18CR742 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | |
| LAUREN B. WOLF, | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States, by and through its attorneys, Justin E. Herdman, United States Attorney, and Brian McDonough, Assistant United States Attorney, and hereby submits this memorandum to aid the Court in its sentencing of Defendant Lauren B. Wolf.  The United States requests the Court to impose a 27-month prison sentence, the high end of the Guidelines, on Wolf for wire fraud.   Such a sentence would reflect the seriousness of the offenses, indicate the level of Wolf's involvement in the offenses, and deter future criminal conduct by Wolf and others.

I.  **SUMMARY OF THE CASE**

On December 14, 2018, the government filed an Information against Wolf charging her with Wire Fraud in violation of 18 U.S.C. § 1343. (R. 1: Information). On December 20, 2018, this Court issued an order referring the matter to Magistrate Judge Burke to conduct an arraignment and receive Wolf's guilty plea. (R. 2: Order of Referral). On January 18, 2019,

Magistrate Judge Burke held a hearing during which Wolf consented to the order of referral (R. 4: Consent to Order) and entered a guilty to plea to Count 1 of the Information.  Magistrate Judge Burke received Wolf's guilty plea and issued a Report recommending that this Court accept his plea and enter a finding of guilty. (R. 7: R&R). On April 17, 2019, upon *de novo* review of the record, this Court adopted the Report and Recommendation and adjudged Wolf guilty of Wire Fraud. The facts giving rise to Wolf's offenses were set forth in detail in the Presentence Investigation Report ("PSR").  *See* PSR ¶¶ 11–26, Doc No. 13.

      Wolf masterminded a scheme to defraud three investors of the $300,000 they invested into her company, Sustainable Coatings, Inc ("SCI"). Wolf originally established SCI as a limited liability corporation and acted as the sole owner, but later converted SCI to an Ohio corporation in February 2016. Thereafter, she acted as the President and a member of the Board of Directors. From January 2016 to November 2016, as President, Wolf solicited investments from the individual investors in exchange for $300,000 worth of cognovit promissory notes.

      Wolf devised a scheme to defraud investors by inducing them to invest in SCI through materially false and fraudulent misrepresentations and omissions of material facts, including SCI's ownership of paint coatings technology, SCI's ability to fulfill sales orders, and the nature and disposition of the investors' money. Regarding the ownership of the paint coatings, Wolf represented to investors that SCI possessed the sole ownership rights to manufacture and sell the unique paint coating product. In reality, however, she knew that the sole ownership rights to the paint coating product belonged to a third party individual and SCI did not have exclusive rights to manufacture, market, or sell the product. Regarding SCI's ability to fill sales orders and the nature and disposition of the investors' money, Wolf told investors that their investments would be applied solely and exclusively to costs associated with the manufacturing and sale of the paint

coating to a specific SCI customer. However, she knew that no manufacturing or sale of the paint coating took place and instead used the funds personally. Additionally, she misrepresented to the investors the financial condition of SCI. To hide her fraud, she provided false financial statements to the investors that concealed her personal use of the investors' funds.

To carry out her scheme, Wolf controlled two bank accounts at KeyBank: One account for SCI and second account called "Wolf Business and Financial Solutions." She initially deposited the investors' funds into the SCI KeyBank account. Thereafter, she made five transactions from January through November 2016 totaling $943.42 with the SCI account for cash withdrawals and personal expenditures. Also during that time, she made 39 bank transfers from the SCI KeyBank account to the Wolf Business and Financial Solutions KeyBank account totaling $106,465. She then used the transferred money for cash withdrawals and personal expenditures. The investors did not authorize any of these transactions and did not authorize Wolf to use their investment funds to pay personal expenditures unrelated to SCI. While misappropriating the investors' funds for personal use, she continued to make false encouraging statements to investors, as well as excuses about the progress of SCI.

## II. SENTENCING GUIDELINES CALCULATIONS

When fashioning an appropriate sentence for a defendant, a court must first consider the applicable guidelines range under 18 U.S.C. § 3553(a)(4). *United States v. Thompson*, 515 F.3d 556, 560 (6th Cir. 2008). Although sentencing guidelines are advisory, they are the "starting point and the initial benchmark" for federal sentencing. *Id.* at 560-561. A court may find facts by a preponderance of the evidence when calculating the appropriate guidelines range. *United States v. Gates*, 461 F.3d 703, 707-708 (6th Cir. 2006). Once a court has determined the

appropriate sentencing range, it should then consider that range in light of the other relevant § 3553(a) factors.  *Thompson*, 515 F.3d at 561.

As an initial matter, a district court is required to make a finding as to loss amount by a preponderance of the evidence using a reasonable estimate predicated upon the facts of the case. The Sixth Circuit Court of Appeals has announced that a district court determines loss by a preponderance of evidence standard. *United States v. Blackwell*, 459 F.3d 739, 772 (6th Cir. 2006) (citing *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005)). In describing the above standard for ascertaining a loss amount, the Sixth Circuit noted that, "the district court's findings are not to be overturned unless they are clearly erroneous." *United States v. Triana*, 468 F.3d 308, 321 (6th Cir. 2006) (*citing United States v. Guthrie*, 144 F.3d 1006, 1011 (6th Cir. 1998).

Concerning adjudicating the loss amount arising from financial frauds, the *Triana* court noted, "[i]n situations where the losses occasioned by financial frauds are not easy to quantify, the district court need only make a reasonable estimate of the loss, given the available information. Such estimates 'need not be determined with precision.'" Id., 468 F.3d at 320. (citations omitted) (citing *United States v. Miller*, 316 F.3d 495, 503 (4th Cir. 2003) and Application Note 2, subpart (c), to USSG § 2B1.1). The *Triana* court also noted the USSG's distinction between "actual loss" and "intended loss." *Id*. "Actual loss" is "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id*. (citing Application Note 2, subpart (A)(I) and (ii), to USSG § 2B1.1). "Intended loss" is the "pecuniary harm that was intended to result from the offense, and it includes "pecuniary harm that would have been impossible or unlikely to occur." *Id*. (citations omitted.) In analyzing the foregoing distinction, the *Triana* court followed Application Note 2 to USSG § 2B1.1 which states that, "loss is the

4

greater of actual loss or intended loss." *Id*. Therefore, a district court must determine the greater of actual loss and intended loss, making a reasonable estimate, by a preponderance of the evidence.

A defendant's loss calculation is predicated upon the actual loss or intended loss caused by defendant's conduct rather than his or her gain as a result of the criminal conduct. In *Triana*, the defendant, who had previously been convicted for health care fraud, was convicted of fraudulently billing Medicare, through his company, for approximately $2,900,000 for podiatric services and receiving approximately $1,700,000 in payments. The district court found the appropriate loss amount to be $1,700,000. On appeal, *Triana* argued that his loss amount should have been the amount of his own personal gain. The *Triana* court rejected this argument in holding, "[C]ourts have consistently held that in calculating loss, 'substitution of defendant's gain is not the preferred method because it ordinarily underestimates the loss.'" (emphasis in original.) *Id.*, 460 F.3d at 323. (citing *United States v. Snyder*, 291 F.3d 1291, 1295 (11th Cir. 2002), *United States v. Chatterji*, 46 F.3d 1336 (4th Cir. 1995) and *United States v. Haddock*, 12 F.3d 950, 960 (10th Cir. 1993). Accordingly, defendants are responsible for the entire scope of the financial harm occasioned by their criminal conduct rather than the benefit they received.

Wolf pleaded guilty to one count of Wire Fraud. The Probation Office correctly stated her Guideline calculation at as base level offense of 7, under United States Sentencing Guidelines ("USSG") § 2B1.1. (R. 13: Final PSR ¶ 31, Page ID 103). An additional 12 levels were correctly added to her base offense level because the loss amount was between $250,000 and $550,000, under U.S.S.G. § 2B1.1(b)(1)(G). *Id.* at ¶ 32, PageID 104. Accordingly, the government believes, and Wolf stipulated in her Plea Agreement that, the total offense level for Count 1, before any departures for acceptance of responsibility, should be 19.

| U.S.S.G. § 2B1.1 – Wire Fraud | | |
|---|---|---|
| Base offense level | 7 | § 2B1.1(a)(1) |
| Loss: $250,000 to $550,000 (i.e., $300,000.00) | +12 | § 2B1.1(b)(1)(G) |
| **Total Offense Level before Acceptance of Responsibility** | 19 | |

**III.     SECTION 3553(a) FACTORS**

In this case, in light of the nature and circumstances of the offense, the history and the characteristics of the defendant, the need to reflect the seriousness of the offense and provide just punishment, and the need to afford adequate deterrence, the government respectfully recommends that the maximum sentence with the Guidelines is sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a).

The Sixth Circuit Court of Appeals requires that a district court provide a reasonable explanation of its application of the sentencing factors outlined in Title 18, § 3553 of the United States Code in imposing a sentence. In *Blackwell,* 459 F.3d at 773, the Sixth Circuit announced:

> The job of the district court is to impose "'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)." In reaching a sentence that complies with the purposes of § 3553(a), the district court must consider the Sentencing Guidelines range and all relevant § 3553 factors. While a district court need not explicitly reference § 3553 or recite a list of factors, it must provide a reasoned explanation for its choice of sentence and its explanation must be sufficiently thorough to permit meaningful appellate review. . . . This Court will only uphold a sentence if it is reasonable. Reasonableness contains two facets: substantive and procedural. In reviewing for reasonableness, the Court employs a presumption for substantive reasonableness.

(Citations omitted.)  Id.  The Sixth Circuit has stated that "while a district court need not engage in a 'ritualistic incantation' of the § 3553(a) factors, its reasoning must be 'sufficiently detailed to reflect considerations listed in § 3553(a) and to allow for meaningful appellate review.'" United States v. Tanner, 382 F. App'x. 421, 423 (6th Cir. 2010) (quoting United States v. Bolds, 511 F.3d 568, 581 (6th Cir. 2007) and United States v. Mayberry, 540 F.3d 506, 518 (6th Cir.

6

2008)).  Therefore, a district court must impose a reasonable sentence while expressing enough of its rationale to permit an appellate court to understand the basis for the sentence imposed.

      A.      **Nature and Circumstances of the Offense**

The nature and circumstances of the offense are severe and troubling. Wolf exploited her investor's trust to use their investments exclusively for SCI expenses to fund her lifestyle. She engaged in a scheme to defraud her investors out of their money, misappropriated the funds for personal expenses, and then created false financial documents and continued to lie to investors to avoid detection. The scheme involved a fraud of $300,000 from three separate victims. Her criminal conduct was sufficiently serious to warrant a maximum Guidelines sentence.

      B.      **History and Characteristics of the Defendant**

Wolf abused the trust placed in her by her investors for almost an entire year. In the face of investors' concerns about their money, she made false representations and reassurances to them to conceal and continue her fraud. She even went to the lengths of creating fraudulent balance sheets and expenditure reports to placate investors' concerns and conceal the real usage of their money– for her expenses. Her crimes began with fraudulent misrepresentations and material omissions to secure the initial investments, but then she chose to continue defrauding her investors for eleven months. Her prolonged fraud and victimization of multiple investors warrant a maximum sentence within the Guidelines range.

      C.      **The Need of the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment**

Imposing the maximum sentence within the range suggested by the Guidelines would reflect the seriousness of Wolf's offenses, promote respect for the law, and provide just punishment. As demonstrated above, her conduct was egregious and her crimes were servere.

The substantial harm to the victims by her warrants significant punishment. Only a considerable sentence will promote proper respect for the law and provide just punishment for her crimes.

### D. The Need of the Sentence Imposed to Afford Adequate Deterrence and Protect the Public from further crimes of the Defendant

Imposing the maximum sentence within the Guidelines range would also deter others from defrauding their investors and using investor money for personal expenses. *United States v. Flores-Machicote*, 706 F.3d 16, 23 (1st Cir. 2013) ("Deterrence is widely recognized as an important factor in the sentencing calculus."); *United States v. Miller,* 484 F.3d 964, 967-968 (8th Cir. 2007) ("general deterrence … is one of the key purposes of sentencing …."); *United States v. Jackson*, 835 F.2d 1195, 1199 (7th Cir. 1987) (Posner, J., concurring) ("deterrence is the surest ground for punishment … since incapacitation may, be removing one offender from the pool of offenders, simply make a career in crime more attractive to someone else, who is balanced on the razor's edge between criminal and legitimate activity and who now faces reduced competition in the crime 'market.'"). As courts have noted, deterrence is particularly important in "white-collar crimes, because they are often perceived as carrying substantially lesser punishment than other comparable offenses." *United States v. Panyard*, No. 07-20037-2, 2009 WL 1099257, at *12 (E.D. Mich. April 23, 2009).

Wolf's misappropriation of her victims' investments was not an isolated incident. She repeatedly used the investment funds for personal expenses while continuing to defraud her investors. Her scheme was rational, calculated, and executed over eleven months. The Sixth Circuit has acknowledged, "…economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence. *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (quoting *United*

*States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)). A prison sentence of 27 months, the maximum sentence within the Guidelines range, would deter others from defrauding investors and using the investments for personal expenses.

## IV. RESTITUTION

As part of her plea agreement with the United States, Wolf agreed to pay restitution to the victims, under 18 U.S.C. § 3663A, payable immediately and on such terms and conditions as the Court may impose. Restitution is also directed by the Guidelines and mandated by law. U.S.S.G. § 5E1.1; 18 U.S.C. § 3663A. The Court should order Wolf to pay a total of $300,000 in restitution to the three victims.

## V. CONCLUSION

For the foregoing reasons, as well as those to be articulated at the sentencing hearing, the United States respectfully requests that this Court sentence Wolf to 27 months' imprisonment and order her to pay the victims restitution for their losses.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: /s/ Brian McDonough
Brian McDonough (OH:0072954)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3965
(216) 522-2403 (facsimile)
Brian.McDonough@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of May 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Brian McDonough
Brian McDonough
Assistant U.S. Attorney